BENESCH, FRIEDLANDER, COPLAN & ARONOFF, LLP
Michael J. Barrie
Abbey Walsh
Leah Lopez
1155 Avenue of the Americas, Floor 26
New York, New York 10036
Telephone:  (646) 593-7050
Facsimile:  (646) 755-3397

*Counsel to Fordham South Lender LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re<br><br>DYNAMIC STAR LLC,<br><br>                     Debtor. | **Hearing Date: January 27, 2026 at 10:00 a.m.**<br>**Objection Deadline: January 20, 2026 at 4:00 p.m.**<br><br>Chapter 11<br><br>Case No. 25-23154 (SHL) |
| In re<br><br>DS 1 GP, INC.,<br><br>                     Debtor. | Chapter 11<br><br>Case No. 25-23155 (SHL) |

<u>**MOTION TO DISMISS CHAPTER 11 CASES**</u>

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

JURISDICTION AND VENUE ............................................................... 2

BACKGROUND .................................................................................... 2

I.      PROCEDURAL BACKGROUND.................................................. 2

II.     THE DEBTORS............................................................................ 3

III.    THE MORTGAGE DEBT AND PLEDGED EQUITY ...................... 4

IV.     FORECLOSURE SALE ON PLEDGED EQUITY .......................... 6

RELIEF REQUESTED............................................................................ 6

BASIS FOR THE RELIEF REQUESTED................................................ 6

I.      THESE CASES SHOULD BE DISMISSED FOR "CAUSE" PURSUANT
        TO SECTION 1112(b)(1) OF THE BANKRUPTCY CODE ............ 7

A.      Cause 1: Bad Faith Filings.......................................................... 7

        1.      The Objective Futility Prong ............................................. 8

        2.      The Subjective Bad Faith Prong ........................................ 10

                i.      Each Debtor Has Only One Asset ................................... 12

                ii.     Each of the Debtors Has Few, if Any, Unsecured Creditors and
                        Such Creditors' Claims are Small in Relation to Those of the
                        Secured Creditors ......................................................... 12

                iii.    Each of the Debtors' Sole Assets are the Subject of a Foreclosure
                        Action as a Result of Arrearages or Default on the Underlying Debt
                        ..................................................................................... 13

                iv.     Each of the Debtors' Financial Conditions are, At Bottom, a
                        Two-Party Dispute Between the Debtors and Lender Which Can
                        Be Resolved in the Pending State UCC Foreclosure Action .............. 13

                v.      The Timing of Each of the Debtors' Filings - Less than
                        Seventeen Hours Before the Scheduled UCC Auction -
                        Evidences an Intent to Delay or Frustrate the Legitimate Efforts
                        of the Debtors' Secured Creditor, Lender, to Enforce Its Rights ........ 14

vi.  Neither Debtor Has Any Cash Flow ..................................................... 15

vii. Neither Debtor Has Any Employees.................................................... 15

B.      Cause 2: Cause Exists under Section 1112(b)(4)(F) of the Bankruptcy
        Code ...................................................................................................... 15

II.     The Debtors' Cases Should Be Dismissed with Prejudice For a Period of
        180 Days Pursuant to Sections 105(a) and 349(a) of the Bankruptcy Code.................... 17

III.    WAIVER OF THE FOURTEEN-DAY STAY UNDER BANKRUPTCY
        RULE 4001(a)(3) IS WARRANTED ................................................................ 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 167 W. 133rd St. Hous. Dev. Fund Corp.*,
    No. 18-12043 (JLG), 2018 WL 4637460 (Bankr. S.D.N.Y. Sep. 25, 2018) ..........9, 10, 11, 14

*In re 698 Flushing Realty Corp.*,
    335 B.R. 17 (Bankr. E.D.N.Y. 2005)......................................................................................14

*In re 234-6 W. 22nd St. Corp.*,
    214 B.R. 751 (Bankr. S.D.N.Y. 1997)...................................................................................14

*In re AAGS Holdings, LLC*,
    608 B.R. 373 (Bankr. S.D.N.Y. 2019)................................................................................8, 11

*Adirondack Mines, Inc. v. United States Tr.*,
    No. 1:10-CV-411 (GLS), 2010 WL 4781529 (N.D.N.Y. Nov. 16, 2010).............................13

*In re AMC Realty Corp.*,
    270 B.R. 132 (Bankr. S.D.N.Y. 2001).....................................................................................8

*In re Casse*,
    198 F.3d 327 (2d Cir. 1999)...................................................................................................18

*C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*,
    113 F.3d 1304 (2d Cir. 1997).................................................................................9, 11, 12, 14

*In re D&G Constr. Dean Gonzalez, LLC*,
    635 B.R. 232 (Bankr. E.D.N.Y. 2021)...................................................................................15

*In re Eclair Bakery Ltd.*,
    255 B.R. 121 (Bankr. S.D.N.Y. 2000)...................................................................................19

*In re Hamann*,
    2025 WL 2268242 (Bankr. E.D.N.Y. July 28, 2025) ............................................................18

*In re JJ Arch LLC.*,
    663 B.R. 258 (Bankr. S.D.N.Y. 2024).....................................................................................8

*In re Kaplan Breslaw Ash, LLC*,
    264 B.R. 309 (Bankr. S.D.N.Y. 2001)...................................................................................12

*In re Kingston Square Assocs.*,
    214 B.R. 713 (Bankr. S.D.N.Y. 1997).....................................................................................8

*In re Northtown Realty Co., L.P.*,
   215 B.R. 906 (Bankr. E.D.N.Y. 1998)................................................................13

*In re Rcm Glob. Long Term Cap. Appreciation Fund, Ltd.*,
   200 B.R. 514 (Bankr. S.D.N.Y. 1996)..........................................................8, 9, 11

*In re Riverbend Cmty., LLC*,
   No. 11-11771 (KG), 2012 WL 1030340 (Bankr. D. Del. Mar. 23, 2012)............18

*In re Roma Grp., Inc.*,
   165 B.R. 779 (S.D.N.Y. 1994)...........................................................................16

*In re Soltzfus*,
   2009 WL 2872860 (Bankr. E.D. Pa. Mar. 30, 2009)........................................19

*In re Tornheim*,
   181 B.R. 161 (Bankr. S.D.N.Y. 1995)................................................................16

*In re Toyota of Yonkers, Inc.*,
   135 B.R. 471 (Bankr. S.D.N.Y. 1992)................................................................11

*Pickering v. M & T Mortg. Corp.*,
   No. 06 Civ. 2284 (SAS), 2006 WL 2404353 (S.D.N.Y. Aug. 18, 2006)..............12

*United States Tr. v. Stone Fox Cap. LLC (In re Stone Fox Cap. LLC)*,
   572 B.R. 582 (Bankr. W.D. Pa. 2017)................................................................15

**Statutes**

11 U.S.C. § 105(a) ...........................................................................1, 2, 17, 18

11 U.S.C. § 305(a) .........................................................................................1, 2, 6

11 U.S.C. § 349(a) ...................................................................1, 2, 7, 17, 18

11 U.S.C. § 521(a) ...................................................................................16, 17

11 U.S.C. § 1112(b) ...............................................................................1, 2, 6, 18

11 U.S.C. § 1112(b)(1) ..................................................................................7, 8

11 U.S.C. § 1112(b)(4)(F) ................................................................................16

28 U.S.C. § 157...................................................................................................2

28 U.S.C. § 157(b)(2) ........................................................................................2

28 U.S.C. § 1334.................................................................................................2

28 U.S.C. § 1408 .......................................................................................................................2

28 U.S.C. § 1409 .......................................................................................................................2

UCC § 9-310(c) ........................................................................................................................6

UCC § 9-610 .............................................................................................................................6

**Other Authorities**

Fed. R. Bankr. P. 1007(a)(1) ...................................................................................................17

Fed. R. Bankr. P. 1007(b)(1) ...........................................................................................3, 16, 17

Fed. R. Bankr. P. 1007(c)(1) ...........................................................................................16, 17

Fed. R. Bankr. P. 1007(d) ...............................................................................................3, 16, 17

Fed. R. Bankr. P. 1017 ..............................................................................................................2

Fed. R. Bankr. P. 2002 ..............................................................................................................2

Fed. R. Bankr. P. 4001 ..............................................................................................................2

Fed. R. Bankr. P. 4001(a)(3) ...................................................................................................19

Fed. R. Bankr. P. 9013 ..............................................................................................................2

Fed. R. Bankr. P. 9014 ..............................................................................................................2

S.D.N.Y. LBR 4001-1 ...............................................................................................................2

S.D.N.Y. LBR 9013-1 ...............................................................................................................2

S.D.N.Y. LBR 9013-2 ...............................................................................................................2

S.D.N.Y. LBR 9013-4 ...............................................................................................................2

Fordham South Lender LLC ("Lender"), by and through its undersigned counsel, Benesch, Friedlander, Coplan & Aronoff LLP, hereby moves (this "Motion") this Court, for entry of an order, a proposed form of which is attached hereto as **Exhibit A**, dismissing the chapter 11 cases of the above-captioned debtors for cause and with prejudice for a period of 180 days pursuant to sections 105(a), 305(a), 349(a) and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code").[1]  In support of this Motion, Lender respectfully states as follows:

### PRELIMINARY STATEMENT[2]

1.    On December 1, 2025, Dynamic Star LLC ("Dynamic Star") and DS 1 GP, Inc. ("DS 1" and together with Dynamic Star, the "Debtors") filed petitions for relief under chapter 11 of the Bankruptcy Code.  The moment chosen for that filing was no coincidence—the petition was filed less than seventeen hours before Lender was set to foreclose on all of each Debtor's issued and outstanding equity in non-debtor DS Fordham Landing 1 LLC ("Borrower").  The equity was pledged by the Debtors to secure in excess of $60 million of indebtedness owed by Borrower to Lender.

2.    This timing lays bare the fact that Debtors lacked the requisite good faith in filing their cases because they did so solely as a litigation tactic to avoid foreclosure on the pledged equity.  That the Debtors filed these cases solely to gain the benefit of the automatic stay and further their campaign of frivolous and dilatory litigation is also apparent from the underlying facts.  Neither Debtor is an operating company; they have no employees and few or no creditors other than Lender.   These cases are essentially single asset real estate cases, because the Debtors

---

[1] Although these cases are related, the debtors have not filed a joint administration motion.  Therefore, this Motion will be filed in both of the above-captioned cases.

[2] As context requires, capitalized terms used in this Preliminary Statement have the meaning given elsewhere in this Motion.

are holding companies with no assets other than direct equity interests in Borrower, which is a non-operating, single asset real estate company that owns property located at 320 West Fordham Road, Bronx, New York (the "Property").  Given the lack of cash flow generated by the Property, it is unknown how the Debtors intend to, or if they even could, finance these cases.  Indeed, in the four weeks since the cases were filed, the Debtors have not filed a single motion or complied with any of their disclosure requirements under the Bankruptcy Rules.  To put it bluntly, that is because these cases cannot possibly achieve any legitimate reorganizational purpose.

3.      As such, the Court should refuse to allow the Debtors to take refuge in chapter 11 with no legitimate bankruptcy purpose and thereby avoid a legitimate enforcement proceeding by Lender to foreclose on its collateral.  Lender moves to dismiss these cases and requests that the Court grant such relief.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of these cases and this Motion are proper under 28 U.S.C. §§ 1408 and 1409.

5.      The statutory predicates for the relief sought herein are sections 105(a), 305(a)(1), 349(a) and 1112(b) of the Bankruptcy Code and related Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), including Bankruptcy Rules 1017, 2002, 4001, 9013, and 9014, and S.D.N.Y. LBR 4001-1, 9013-1, 9013-2, and 9013-4.

## BACKGROUND

### I.      PROCEDURAL BACKGROUND

6.      On December 1, 2025 (the "Petition Date"), Dynamic Star and DS 1 each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, commencing these chapter 11 cases.

7.    As of the date of this Motion, no request has been made for the appointment of a trustee or examiner and no statutory creditors' committee has been appointed.

**II.    THE DEBTORS**

8.    As represented in the Consolidated Declaration (defined below), Dynamic Star and DS 1 collectively own 100% of the Class A equity in Borrower.  *See* Dynamic Star Petition [Case No. 25-23154, Dkt. No. 1], Consolidated Declaration Pursuant to Local Bankruptcy Rule 1007-2 (the "Consolidated Declaration") ¶ 6.  Borrower, in turn, owns a single parcel of real estate.[3]  *See id*.

9.    Upon information and belief, the Debtors are stock holding companies that have no operations, employees, revenues or assets beyond the equity interests owned by each.  Neither Debtor has filed its list of top 20 unsecured creditors, as required by Bankruptcy Rule 1007(d) or its Schedules of Assets and Liabilities, as required by Bankruptcy Rule 1007(b)(1), but, upon information and belief, each Debtor has no creditors or very few creditors other than Lender.[4] Neither Debtor has filed any motions seeking relief from the Court (not even a joint administration motion) despite the cases having been commenced more than four weeks ago.  Although counsel signed the Debtors' petitions, no retention application has been filed.  The likely reason for these omissions and failures is that the only reason that the Debtors filed for bankruptcy was to gain the benefit of the automatic stay and forestall the pending foreclosure on the Pledged Equity, which is discussed below.  Upon information and belief, the Debtors have no cash on hand and therefore, have no ability to fund the costs of these chapter 11 cases.

---

[3] Debtors have stated that they intend to commence a bankruptcy case for the Borrower, but no such case has been commenced at this time.

[4] In the Consolidated Declaration, it was represented that each Debtor would file these documents within 14 days of the Petition Date, which would have been December 15, 2025.  Consolidated Decl., ¶¶ 15, 17.

10.     Annexed to each of the Debtors' chapter 11 petitions is the Consolidated Declaration. *See, e.g.*, Dynamic Star Petition [Case No. 25-23154, Dkt. No. 1]. The Consolidated Declaration relates to the Debtors as well as to DS Fordham Landing Preferred Sponsor LLC (Case No. 25-23156) and DS Fordham Landing Preferred LLC (Case No. 25-23157) (together, the "Fordham North Debtors"), which also filed chapter 11 petitions contemporaneous with the Debtors' petitions and which cases were also assigned to the Honorable Judge Sean Lane.

### III.   THE MORTGAGE DEBT AND PLEDGED EQUITY

11.     Prior to the Petition Date, CPIF Lending, LLC (the "Assignor") made loans to Borrower in the aggregate principal amount of $44,500,000.00 (the "Loan") pursuant to that certain Loan Agreement dated as of March 1, 2022 (as amended, supplemented or otherwise modified, the "Loan Agreement"). To secure the Loan, Borrower granted Lender a mortgage on the Property. In addition, each Debtor granted Assignor a lien on its equity interests in Borrower pursuant to that certain Pledge Agreement dated as of March 1, 2022 by DS 1 (the "DS 1 Pledge Agreement" and that certain Amended and Restated Pledge Agreement dated as of April 20, 2022 by Dynamic Star (the "Dynamic Star Pledge Agreement" and, collectively with the DS 1 Agreement, the "Pledge Agreements"). Copies of the Pledge Agreements are attached hereto as **Exhibit C**.

12.     The Loan matured on August 8, 2024 (the "Maturity Date"). Borrower did not repay the Loan on the Maturity Date.

13.     On October 18, 2024, pursuant to sections 18.1.2 and 19.1.2 of the Loan Agreement, Assignor delivered to Borrower, the guarantors of the obligations of DS Fordham Landing under the Loan Agreement (the "Guarantors"), and the Debtors a Notice of Default and Reservation of Rights (the "Default Notice"), notifying them of the occurrence and continuation

of multiple Events of Default under the Loan Documents, including the failure to repay the loan obligations due and owing under the Loan Agreement on the Maturity Date.[5] *See* Default Notices attached hereto as **Exhibit D**.

14.    Assignor assigned all of its rights, title and interest under the Loan Agreement, Pledge Agreements and other loan documents to Lender pursuant to that certain Amended and Restated Assignment and Assumption of Interests and Obligations dated as of June 24, 2025 by and between Assignor and Lender (the "Assignment Agreement").    A copy of the Assignment Agreement is attached hereto as **Exhibit E**.

15.    The total amount of obligations due and owing under the Loan Agreement is currently in excess of $60 million.    *See* Declaration of Joseph Cafiero (the "Cafiero Decl.") ¶ 6, a copy of which is attached hereto as **Exhibit B**. As of the date hereof, neither the Debtors nor the nor the Guarantors have paid the obligations.    *See* Cafiero Decl., ¶ 5.

16.    In the Consolidated Declaration, the Debtors reserve the right to challenge the liens and standing of Lender for failure to properly perfect its liens and to properly record the assignment documents in compliance with the requirements of the UCC.    Consolidated Decl., ¶ 13.    Lender is unsure of the basis for this challenge. The Debtors granted liens on the Pledged Equity pursuant to the Pledge Agreements and those liens were validly assigned to Lender by the Assignment Agreement.    Moreover, Assignor properly filed UCC-1 financing statements to perfect the liens granted by the Pledge Agreements and Lender filed UCC-3 financing statements to record the assignment of the liens by Assignor to it.    Copies of the UCC-3 Financing Statements filed against the Debtors by Lender and the UCC-1 Financing Statements filed against the Debtors by Assignor

---

[5] Assignor sent a second default notice to Borrower, Guarantors and the Debtors on April 22, 2025 regarding Borrower's failure to discharge a mechanic's lien filed on the Property as required by section 14.1.1 of the Loan Agreement and Borrower's failure to pay taxes on the Property as required by section 14.3 of the Loan Agreement. *See* Default Notices attached hereto as **Exhibit D**.

are attached hereto as **Exhibit F**.  As such, the Debtors have no valid basis on which to challenge the validity, priority or perfection of Lender's liens on the Pledged Equity.[6]  And, it should be noted that, as discussed below, although the Debtors received notice of the UCC sale of the Pledged Equity first on October 8, 2025 and again on November 21, 2025, they have taken no action to challenge that sale on the grounds that Lender's liens were not valid or enforceable.  Instead, they filed these chapter 11 cases to prevent the UCC sale from going forward.

### IV.   FORECLOSURE SALE ON PLEDGED EQUITY

17.     On each of October 8, 2025, and November 21, 2025, Lender sent the Debtors a Notification of Disposition of Collateral (together, the "Notices of Disposition"), which, among other things, provided notice that the Pledged Equity would be sold at a non-judicial auction under section 9-610 of the Uniform Commercial Code (the "UCC Auction") on December 2, 2025 at 10:00 a.m. (EST).  *See* Notices of Disposition, copies of which are attached hereto as **Exhibit G**.

18.     Due to the filing of the Debtors' petitions less than seventeen hours before the UCC Auction was to occur, the UCC Auction did not occur.

### RELIEF REQUESTED

19.     Lender seeks entry of an order pursuant to sections 1112(b) and 305(a) of the Bankruptcy Code dismissing the Debtors' chapter 11 cases for cause and with prejudice for a period of 180 days from the date of entry of the order pursuant to section 349(a) of the Bankruptcy Code.

### BASIS FOR THE RELIEF REQUESTED

### I.   THESE CASES SHOULD BE DISMISSED FOR "CAUSE" PURSUANT TO SECTION 1112(b)(1) OF THE BANKRUPTCY CODE

---

[6] As already noted above, Assignor properly assigned all of its rights, title and interest in the Pledged Equity to Lender. No recording of the assignment was required for this assignment to be valid and enforceable against the Debtors.  *See* Pledge Agreements § 3.5; UCC § 9-310(c).

20.     Section 1112(b)(1) of the Bankruptcy Code provides, in pertinent part, that:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1).

21.     There are two causes for compelling dismissal of the Debtors' chapter 11 cases: (i) the Debtors each filed their petition in bad faith (indeed, a mere seventeen hours before the scheduled UCC Auction) and with no reasonable prospect of reorganization, and (ii) each Debtor has, without excuse, failed to timely satisfy multiple filing and reporting requirements established by the Bankruptcy Code and the Bankruptcy Rules.

22.     While section 1112(b)(1) provides that the remedy for a finding of cause may be dismissal, conversion of the case to chapter 7 or the appointment of a chapter 11 trustee or examiner, Lender submits that dismissal is in the best interests of the creditors and the estate because there are either no creditors or very few creditors other than Lender, no cash, no employees and no operations that need protection under the Bankruptcy Code. The Debtors' only assets are equity which have been pledged to secure the Debtors' obligations under the Loan Agreement to pay the Loan and there is no evidence that the value of that equity is equal to or greater than the obligations, leaving Lender as the only party with an interest in the Debtors' assets.

### A.     Cause 1: Bad Faith Filings

23.     While the Bankruptcy Code does not list "bad faith" as an enumerated ground for dismissal under section 1112(b), nevertheless "[i]t is well settled that a finding that a case was filed in bad faith can constitute 'cause' for dismissal under section 1112(b)(1)." *In re AAGS*

*Holdings, LLC*, 608 B.R. 373, 382 (Bankr. S.D.N.Y. 2019) (internal citations omitted); *see also In re AMC Realty Corp.*, 270 B.R. 132, 140 (Bankr. S.D.N.Y. 2001) ("Cause, for either dismissal or relief from the stay, may be found based on enumerated factors, including bad faith") (internal citation and quotations omitted).  In assessing whether a debtor's petition was filed in bad faith, the bankruptcy court must consider "the totality of circumstances, rather than any single factor." *In re Rcm Glob. Long Term Cap. Appreciation Fund, Ltd.*, 200 B.R. 514, 520 (Bankr. S.D.N.Y. 1996), *corrected* (Sept. 18, 1996).

24.     This Court has identified two elements that must be satisfied for dismissal on the grounds of bad faith: courts must find both "objective futility of the reorganization process and subjective bad faith in the filing of the petition."  *In re Kingston Square Assocs.*, 214 B.R. 713, 725 (Bankr. S.D.N.Y. 1997) (internal citations omitted).  A chapter 11 case is subject to dismissal on the grounds of bad faith if it is clear on the filing date that "there was 'no reasonable likelihood that the debtor intended to reorganize' (the "subjective bad faith prong"); and . . . 'no reasonable possibility that the debtor will emerge from bankruptcy' (the "objective futility prong")." *In re JJ Arch LLC.*, 663 B.R. 258, 281-82 (Bankr. S.D.N.Y. 2024) (quoting *In re Hudson 888 Owner LLC*, 2024 WL 1145664, at *4 (Bankr. S.D.N.Y. Mar. 15, 2024).  As the Second Circuit has stated, "the purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state.  'If there is not a potentially viable business in place worthy of protection and rehabilitation, the Chapter 11 effort has lost its *raison d'etre*'" and the chapter 11 case must be dismissed.  *C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'ship)*, 113 F.3d 1304, 1310 (2d Cir. 1997) (quoting *In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985)).

### 1.  The Objective Futility Prong

8

25.     The "objective futility" prong of the bad faith test "focuses on whether a reorganization is realistically possible," *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, No. 18-12043 (JLG), 2018 WL 4637460, at *10 (Bankr. S.D.N.Y. Sep. 25, 2018) (internal citation and quotation omitted), and "is designed to ensure that the debtor actually has a potentially viable business in place to protect and rehabilitate." *In re Rcm Glob. Long Term Cap. Appreciation Fund*, 200 B.R. at 520.  The proper purposes of chapter 11 are "to rehabilitate the debtor and offer a fresh start," and "to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state."  *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1308, 1310 (citation omitted).

26.     Objectively, the Debtors do not have a business to reorganize. They are just holding companies. The Debtors' only meaningful asset is the issued and outstanding equity in Borrower. Borrower's only asset is the Property, which consists of undeveloped real estate.  The Debtors' Consolidated Declaration speaks in grandiose terms about their intention to develop the Fordham South and Fordham North Debtors' properties into the "largest new affordable housing project in the City of New York over the last several decades." Consolidated Declaration, ¶ 7.  However, it is clear from the Consolidated Declaration that the Debtors' prospects for obtaining financing for a redevelopment are only speculative.

27.     The Debtors' plans for the Property are nothing more than dreams at the moment. The Consolidated Declaration claims that "$55 million was recently committed by New York State for infrastructure relating to the Fordham South project."  *Id.*  However, the Consolidated Declaration did not attach a copy of this commitment.  And, Lender questions what infrastructure "related to Fordham South" even means.  The Consolidated Declaration does not say that this financing will provide a means for paying off the Loan obligations.  And, in fact, it likely will not

because the Consolidated Declaration goes on to say that "Debtors have targeted April 1, 2026 as the projected closing date to obtain construction funding from the New York City Department of Housing Preservation and Development ("HPD"), *which will enable the Debtors to refinance and payoff the outstanding debt on Fordham South. Id.*, ¶ 9 (emphasis added).  So, as of the now, the Debtors do not have a means of paying off the Loan obligations, which are in excess of $60 million. It is also unclear from the Consolidated Declaration what gating requirements the Debtors must satisfy in order to obtain financing—such as re-zoning of the property.  Therefore, the Debtors have no means of reorganizing themselves.

28.     This case is objectively futile due to the contingencies standing between the Debtors and a reorganization.  Furthermore, the Debtors make no representation regarding the value of the Property.  Lender believes that the Property is worth less than the outstanding Loan obligations, which is yet another reason that a restructuring is objectively impossible here.  As such, there is no realistic possibility of reorganization, and the objective futility prong is satisfied.

**2.   The Subjective Bad Faith Prong**

29.     "The subjective bad faith standard is meant to insure that the Debtor actually intends to use chapter 11 to reorganize and rehabilitate itself and not simply to cause hardship or delay to its creditors by invoking the automatic stay." *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, 2018 WL 4637460, at *10.  In evaluating the dismissal of a chapter 11 filing under the subjective bad faith prong, courts in the Second Circuit will consider whether the following factors or "badges" are present: (a) the debtor has only one asset; (b) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (c) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (d) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured

creditors which can be resolved in the pending state foreclosure action; (e) the timing of the

debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured

creditors to enforce their rights; (g) the debtor has little or no cash flow; (i) the debtor cannot meet

current expenses including the payment of personal property and real estate taxes;  and (j) the

debtor has no employees.  *See In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311; *see also In re 167 W.

*133rd St. Hous. Dev. Fund Corp.*, 2018 WL 4637460, at *10-11.  The "badges" are typically

applied to single asset real estate cases or in analogous situations.  *See, e.g., In re AAGS Holdings,*

*LLC*, 608 B.R. at 383 (applying the *C-TC* factors when the debtor was the contract vendee under

an agreement to purchase real property because the case was "essentially a single asset real estate

case concerning the Property.").  Ultimately, "an inquiry into whether a petition was filed in bad

faith requires the court to consider the entire view of the facts and circumstances—no one factor

is determinative." *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311 (internal citation omitted).

30.     It is well-settled across the circuits that a chapter 11 case may be dismissed on bad

faith grounds when a debtor is seeking to frustrate a creditor's attempts to foreclose on its sole

asset or to delay pending litigation against it. *See In re Toyota of Yonkers, Inc.*, 135 B.R. 471, 475

(Bankr. S.D.N.Y. 1992) (collecting cases).  Moreover, a debtor must "actually intend[] to use

chapter 11 to reorganize and rehabilitate itself and not simply to cause hardship or delay to its

creditors by invoking the automatic stay." *In re Rcm Glob. Long Term Cap. Appreciation Fund*,

200 B.R. at 522. As an examination of the "badges" demonstrates, the Debtors did not file for

bankruptcy with an intention to reorganize but instead, to cause hardship and delay to Lender.  This

satisfies the subjective bad faith prong.  *See, e.g., In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309,

335 (Bankr. S.D.N.Y. 2001) (dismissing a chapter 11 case on the grounds that it was a two-party

dispute between a mortgage holder and the debtor and because the debtor had "timed its

bankruptcy filing so that it could avail itself of the automatic stay in order to stop the foreclosure action.").

31.     The Debtors' subjective bad faith is further evidenced by an examination of the Second Circuit's "badges".

### i.   Each Debtor Has Only One Asset

32.     Each Debtor's sole asset is its respective share of issued and outstanding Class A equity in Borrower.  In turn, the only asset of Borrower is the Property. Courts in the Second Circuit have consistently held that the presence of this factor weighs against a finding of good faith on the part of the debtor.  *See, e.g., In re C-TC 9th Ave. P'ship*, 113 F.3d at 1311-12 (affirming bankruptcy court's decision to dismiss a chapter 11 petition on bad faith grounds where, among other things, the debtor had only one asset); *Pickering v. M & T Mortg. Corp.*, No. 06 Civ. 2284 (SAS), 2006 WL 2404353, at *3-4 (S.D.N.Y. Aug. 18, 2006) (noting that various courts have found bad faith when a single-asset debtor with no realistic prospect of reorganization files for bankruptcy in order to gain relief from either a two-party dispute or a state court action) (collecting cases).  Accordingly, this factor weighs in favor of a finding of bad faith.

### ii.   Each of the Debtors Has Few, if Any, Unsecured Creditors and Such Creditors' Claims are Small in Relation to Those of the Secured Creditors

33.     Courts in the Second Circuit have recognized that the lack of unsecured claims or the presence of unsecured claims that are relatively small in relation to a secured creditor's claim weighs in favor of finding bad faith.  *See, e.g.*, *Adirondack Mines, Inc. v. United States Tr.*, No. 1:10-cv-411 (GLS), 2010 WL 4781529, at *8 (N.D.N.Y. Nov. 16, 2010) (upholding bankruptcy court's finding of bad faith on the grounds that the debtor had only "speculative" and "de minimis" unsecured claims, making the case a two-party dispute with the debtor's sole secured creditor); *In*

*re Northtown Realty Co., L.P.*, 215 B.R. 906, 916 (Bankr. E.D.N.Y. 1998) (finding bad faith where "the claims of unsecured or subordinate creditors (approximately $6 million) are dwarfed by MetLife's [secured] claim (approximately $25-26 million).")

34.    Here, as far as Lender can tell from the consolidated creditor matrix filed by the Debtors, there are only a handful of creditors collectively among the Debtors and the Fordham North Debtors. *See, e.g.,* Dynamic Star Consolidated Creditor Matrix [Case No. 25-23154, Dkt. No. 2].  And, it seems unlikely that every creditor on the matrix holds claims against all four debtors—further reducing the number of creditors with claims against any particular Debtor and making it possible that some Debtors have no creditors at all other than Lender.  In contrast, Lender's claim against Debtors is in excess of $60 million and that claim is secured by both Debtors' Pledged Equity.  As such, this factor weighs in favor of a finding of bad faith.

### iii. Each of the Debtors' Sole Assets are the Subject of a Foreclosure Action as a Result of Arrearages or Default on the Underlying Debt

35.    The Debtors' only assets are the Pledged Equity. In both cases, the Pledged Equity was subject to an impending foreclosure via UCC Auction at the time the petitions were filed, due to the failure of Borrower to repay the Loan obligations on the Maturity Date and other defaults under the Loan Agreement. This factor weighs in favor of a finding of bad faith.

### iv. Each of the Debtors' Financial Conditions are, At Bottom, a Two-Party Dispute Between the Debtors and Lender Which Can Be Resolved in the Pending State UCC Foreclosure Action

36.    The Debtors' bankruptcy proceedings are really part of an ongoing two-party dispute between the Debtors and Lender, as evidenced by the UCC Auction.  Courts generally hold in these circumstances that such a dispute does not belong in bankruptcy court.  *See, e.g.*, *In re C-TC 9th Ave. P'ship*, 113 F.3d at 1312 (stating that, in a case involving prepetition breach of contract

and foreclosure litigation between the debtor and its secured creditor, in "such two-party disputes, the state court, which has been overseeing the case, is a preferable forum"); *In re 167 W. 133rd St. Hous. Dev. Fund Corp.*, 2018 WL 4637460, at *11 (finding grounds for dismissal due to bad faith because the debtor's "financial condition essentially is a two party dispute between the City and the Debtor that will be resolved in accordance with the procedures under the Administrative Code."); *In re 698 Flushing Realty Corp.*, 335 B.R. 17, 20–21 (Bankr. E.D.N.Y. 2005) (holding that a bankruptcy case was filed in bad faith because, among other things, it was "a two-party dispute between the debtor, on the one hand, and the movants, on the other" which was "commenced in an effort to gain the upper hand in state court litigation").

37.     Although there is no pending litigation between Lender and the Debtors, Lender was pursuing a non-judicial foreclosure on the Pledged Equity pursuant to the UCC Auction, which seeks the same outcome as judicial foreclosure and therefore should be viewed as satisfying this factor.

> **v.   The Timing of the Each of the Debtors' Filings—Less than Seventeen Hours Before the Scheduled UCC Auction— Evidences an Intent to Delay or Frustrate the Legitimate Efforts of the Debtors' Secured Creditor, Lender, to Enforce Its Rights**

38.     The Debtors filed their cases less than twenty-four hours before the scheduled UCC Auction.  Courts have repeatedly held under similar circumstances that such timing is highly suggestive of bad faith.  *See, e.g.*, *In re 234-6 W. 22nd St. Corp.*, 214 B.R. 751, 760 (Bankr. S.D.N.Y. 1997) (finding that "the timing of the Debtor's filing evinces an intent to delay or frustrate the legitimate efforts of its secured creditor to enforce its rights" when the debtor filed for chapter 11 "the day before the foreclosure sale."); *In re D&G Constr. Dean Gonzalez, LLC*, 635 B.R. 232, 239 (Bankr. E.D.N.Y. 2021) (finding that, when a petition was filed on the eve of state

court foreclosure and eviction proceedings, it was "apparent to the Court that Debtor is simply using this Court to further delay and frustrate the Mortgage Holders attempts to enforce their rights"); *United States Tr. v. Stone Fox Cap. LLC (In re Stone Fox Cap. LLC)*, 572 B.R. 582, 586 (Bankr. W.D. Pa. 2017) (filing was in bad faith where bankruptcy proceeding commenced four days before sheriff's sale of collateral).

39.     The Debtors concede outright in the Consolidated Declaration that the timing of their chapter 11 petitions were intended to stave off the foreclosure of the Pledged Equity and, by extension, frustrate Lender's efforts to exercise its remedies.   This fact can lead to only one conclusion: the Debtors' sole purpose in commencing these cases was to obtain the benefit of the automatic stay.  This factor weighs strongly in favor of a finding of bad faith.

### vi.  Neither Debtor Has Any Cash Flow

40.     Lender does not believe that either Debtor has any cash flow.  Nor would the Debtors be expected to be generating any cash flow, because, as holding companies, neither of them operates an ongoing business and the Property owned by Borrower does not generate any revenue.  This factor weighs in favor of a finding of bad faith.

### vii. Neither Debtor Has Any Employees

41.     Lender does not believe that either Debtor has any employees.   This belief is supported by the fact that the Debtor has not filed any first day motions seeking to pay employees. This factor weighs in favor of a finding of bad faith.

### B.      Cause 2: Cause Exists under Section 1112(b)(4)(F) of the Bankruptcy Code

42.     Section 1112(b)(4) sets forth a non-exclusive list of causes to dismiss a chapter 11 case, including:

> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter

11 U.S.C. § 1112(b)(4)(F).

43.     In reliance on this enumerated "cause" for dismissal, courts in this district have
dismissed chapter 11 cases where the debtor did not comply with its reporting obligations. *In re
Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995) ("Refusal or inability to provide financial
disclosure sounds the death knell of a Chapter 11 case" and failure to file required financial
documentation "undermines the Chapter 11 process and constitutes cause for dismissal or
conversion of the Chapter 11 proceedings.") (internal quotations and citations omitted); *see also
In re Roma Grp., Inc.*, 165 B.R. 779, 780-81 (S.D.N.Y. 1994) (dismissing chapter 11 cases where
debtors failed to file monthly operating statements).

44.     Bankruptcy Rules 1007(b)(1) and (c)(1) require a debtor to file the following
documents within fourteen days after the petition is filed:

> (A) schedules of assets and liabilities;
> (B) a schedule of current income and expenditures;
> (C) a schedule of executory contracts and unexpired leases; and
> (D) a statement of financial affairs

Fed. R. Bankr. P. 1007(b)(1), (c)(1).  Likewise, Bankruptcy Rule 1007(d) requires a debtor to file
a list of the twenty largest unsecured claims in its chapter 11 case, along with identifying
information for each creditor holding such claims, while section 521(a) of the Bankruptcy Code
similarly requires debtors to file Schedules of Assets and Liabilities and Schedules of Income and
Expenditures (together, the "<u>Schedules</u>") and Statement of Financial Affairs ("<u>SOFA</u>") and a list
of creditors.  *See* 11 U.S.C. § 521(a).

45.     Here, the Debtors did not file their required Schedules and SOFA within fourteen
days of filing of either of their Petitions as required by Bankruptcy Rules 1007(b)(1) and (c)(1)
and section 521(a) of the Bankruptcy Code, and still have not filed any of their Schedules or
SOFAs as of the date of this Motion, four weeks after the Petition Date.  In addition, the Debtors

have not filed with the petitions any individualized lists of creditors holding both secured and unsecured claims against each Debtor as required under Bankruptcy Rule 1007(a)(1) and section 521(a) of the Bankruptcy Code.  Nor have they filed a list of each of their twenty largest unsecured creditors, and those creditors' respective claims, as required by Bankruptcy Rule 1007(d).  Instead, they have filed the so-called Consolidated Creditor Matrix that appears to aggregate the creditors for both Debtors in this case as well as the Fordham North Debtors, fails to identify the basis of the claims held by each creditor and their secured or unsecured status, and fails to indicate which claims have been asserted against which of the four Debtors.  *See* Consolidated Creditor Matrix [Case No. 25-23154, Dkt. No. 2 and Case No. 25-23155, Dkt. No. 2].

46.     The Debtors' failure to timely make their required disclosures and comply with the Bankruptcy Rules and Bankruptcy Code constitutes cause for dismissal of these cases.

## II.  The Debtors' Cases Should Be Dismissed with Prejudice For a Period of 180 Days Pursuant to Sections 105(a) and 349(a) of the Bankruptcy Code

47.     Section 349(a) of the Bankruptcy Code provides in relevant part that "[u]nless the court, for cause, orders otherwise, the dismissal of a case under this title does not . . . prejudice the debtor with regard to the filing of a subsequent petition under this title …."  11 U.S.C. § 349(a). Pursuant to section 105(a) of the Bankruptcy Code, the Court may "tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, ***or to prevent an abuse of process***." 11 U.S.C. § 105(a) (emphasis added).

48.     A bankruptcy court may apply its inherent powers under sections 105(a) and 349(a) to dismiss a debtor's chapter 11 case with prejudice and prohibit subsequent filings where the debtor commenced its bankruptcy case for an improper purpose and in bad faith.  *See In re Casse*, 198 F.3d 327, 335-36 (2d Cir. 1999) (holding that the bankruptcy code authorizes bankruptcy courts to dismiss bankruptcies filed in bad faith "with prejudice"); *see also In re Hamann*, 2025

WL 2268242 at *6 (Bankr. E.D.N.Y. July 28, 2025) (dismissing case with prejudice due to bad

faith filing).  Dismissal with prejudice is also appropriate where necessary to prevent the debtor

from obtaining an unfair advantage in ongoing disputes outside of the bankruptcy court.  *See, e.g.*,

*In re Riverbend Cmty., LLC,* No. 11-11771 (KG), 2012 WL 1030340 at *3-4 (Bankr. D. Del. Mar.

23, 2012) (dismissing a bankruptcy case with prejudice under sections 349(a) and 1112(b) of the

Bankruptcy Code and enjoining the debtor from filing another bankruptcy case until after a

foreclosure sale occurred).

49.    Here, it is necessary for the Court to dismiss the Debtors' cases with prejudice for

a period of 180 days from the date of the entry of the order to prevent the Debtors from attempting

to file a successive petition in this or another jurisdiction to further delay the UCC Auction, and

otherwise frustrate Lender's rights with respect to the Pledged Equity.  As a consequence of the

Debtors' bad faith filing, Lender faces the risk of material diminution of the value of its collateral

as a result of further delay and the continued accrual of default rate interest, which could escalate

the obligations owed to Lender to an amount in excess of the value of the Pledged Equity (to the

extent that it is not already more than the value of the Pledged Equity).  Accordingly, Lender

respectfully submits that the Court should order the dismissal of the Debtors' chapter 11 cases with

prejudice and prospectively enjoin any further filings by the Debtors for a period of 180 days from

the date of the entry of the order to prevent any further harm to Lender.

### III.    WAIVER OF THE FOURTEEN-DAY STAY UNDER BANKRUPTCY RULE 4001(a)(3) IS WARRANTED

50.    Courts may waive the fourteen-day stay under Bankruptcy Rule 4001(a)(3) based

upon the totality of the circumstances and as an equitable remedy.  *See In re Eclair Bakery Ltd.*,

255 B.R. 121, 143 n.42 (Bankr. S.D.N.Y. 2000) (stay under Rule 4001(a)(3) waived due to

debtor's unclean hands); *In re Soltzfus*, 2009 WL 2872860, at *7 (Bankr. E.D. Pa. Mar. 30, 2009) (stay under Rule 4001(a)(3) waived due to debtor's improper filing of bankruptcy case).

51.    Here, the Debtors' bad faith filing of their chapter 11 cases, where Debtors clearly lack any ability to effectively reorganize, combined with the risk to the value of Lender's collateral as discussed above, all warrant a waiver of the fourteen-day stay.  Accordingly, Lender respectfully requests that the Court waive the fourteen-day stay period under Bankruptcy Rule 4001(a)(3).

WHEREFORE, the Lender respectfully requests that the Court enter an order substantially in the form attached hereto as **Exhibit A**, (i) dismissing the chapter 11 cases with prejudice; (ii) enjoining each of the Debtors from filing any subsequent petitions for bankruptcy relief for a period of 180 days; and (iii) granting such other and further relief that is just and proper under the circumstances.

Dated: December 30, 2025

**BENESCH, FRIEDLANDER,**
**COPLAN & ARONOFF LLP**

By: _/s/ Abbey Walsh_
Michael J. Barrie (NY 5057450)
Abbey Walsh (NY 3068921)
Leah Lopez (NY 5876065)
1155 Avenue of the Americas, Floor 26
New York, NY 10036
Telephone: (646) 777-0054
Email:  mbarrie@beneschlaw.com
abbey.walsh@beneschlaw.com
llopez@beneschlaw.com

*Attorneys for Fordham South Lender LLC*